L6PPMELS

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4                  v.                        19 CR 480 (RA)
                                             Remote Sentence
5    JOSEPH MELI,

6                  Defendant.

7    ------------------------------x

8                                            New York, N.Y.
                                             June 25, 2021
9                                            9:11 a.m.

10   Before:

11                     HON. RONNIE ABRAMS,

12                                           District Judge

13

                     APPEARANCES VIA VIDEOCONFERENCE
14
     AUDREY STRAUSS,
15        United States Attorney for the
          Southern District of New York
16   BY:  MICAH F. FERGENSON
          Assistant United States Attorney
17
     MERINGOLO & ASSOCIATES, P.C.
18        Attorneys for Defendant
     BY:  JOHN C. MERINGOLO
19                AND
     LAW OFFICE OF ANTHONY DiPIETRO
20   BY:  ANTHONY DiPIETRO

21

22

23

24

25

L6PPMELS

 1              (The Court and all parties appearing via

 2      videoconference)

 3              (Case called)

 4              MR. FERGENSON:  Good morning, your Honor.  Micah

 5      Fergenson for the government.

 6              THE COURT:  Good morning.

 7              MR. MERINGOLO:  Good morning, your Honor.  John

 8      Meringolo and Anthony DiPietro for Mr. Meli.

 9              THE COURT:  Good morning.

10              Mr. Meli, can you hear me?  This is Judge Abrams.

11              THE DEFENDANT:  Yes, I can, Judge Abrams.  Thank you.

12      Can you hear me?

13              THE COURT:  I can, but I just wanted to make sure that

14      I can see you as well.  If at any time during this proceeding

15      you can't see or hear anyone, or if at any time during this

16      proceeding you would like to speak privately with your

17      attorney, please let me know.  Okay?

18              THE DEFENDANT:  Thank you, your Honor.

19              THE COURT:  Okay.  So, first, I just want to remind

20      everyone that this is a public proceeding; so members of the

21      public and the press are able to access the proceeding through

22      the public call-in number, but all participants or listeners

23      are reminded that no recording or rebroadcasting is permitted.

24              So we're, of course, in the middle of the Covid-19

25      pandemic, and I must conduct this proceeding remotely pursuant

L6PPMELS

1    to the authority provided by section 15002 of the CARES Act and

2    the standing orders issued by our chief judge.  I'm proceeding

3    by videoconference, although, I am within the district.  And

4    counsel are proceeding by videoconference, as well, and

5    Mr. Meli, the defendant, is proceeding from Otisville

6    Correctional Facility.

7            All right.  Could counsel please describe the process

8    by which you discussed with Mr. Meli his right to be present in

9    court for this proceeding and any knowing and voluntary waiver

10   of that right?

11           MR. MERINGOLO:  Yes, your Honor.  This is John

12   Meringolo for Mr. Meli.  We've had numerous conversations,

13   legal calls and such.  In addition to that, at the plea

14   hearing, I believe which your Honor presided over, we agreed on

15   the record that Mr. Meli would proceed with this sentencing

16   from Otisville due to the Covid restraints and the constant

17   isolation and lockdown that he would have to go through because

18   right before his plea, he was transferred to Otisville and he

19   had to quarantine.  And if he had to come back, it would have

20   been very detrimental to him.

21           THE COURT:  All right.  So, Mr. Meli, I just want to

22   just confirm with you that you understand that you have a right

23   to be physically present in court, in person for this

24   proceeding, but that you are choosing to give up that right and

25   proceed by way of videoconference.  Is that correct?

L6PPMELS

1          THE DEFENDANT:  That's correct, your Honor.

2          THE COURT:  All right.  I find that a knowing and

3     voluntary waiver of the right to be physically present for this

4     sentencing has been made.  I also find that today's proceeding

5     cannot be further delayed without serious harm to the interest

6     of justice because it's important that we proceed with this

7     sentencing.

8          All right.  This matter is on for sentencing.  Of

9     course, Mr. Meli pled guilty in April to conspiracy to commit

10    wire fraud and securities fraud, in violation of 18, United

11    States Code, Section 371.

12         In connection with today's proceeding, I've reviewed

13    the following submissions:  The presentence report, dated

14    June 22nd, 2021, including the recommendation and addendum;

15    Mr. Meli's sentencing memorandum, dated June 10th, with

16    accompanying exhibits.  I also more recently received an

17    additional letter from Mr. Meli's son, filed on June 22nd,

18    2021; and I received the government's sentencing memorandum,

19    dated June 16th, 2021.

20         I did receive a call from one of Mr. Meli's victims.

21    I'm not sure if he's on the line, and I'm going to ask later in

22    the proceeding if there are any victims who would like to be

23    heard, but I did want to note for the record that I got a call

24    saying that he just found out that Mr. Meli was being sentenced

25    again, and he wants me to know that:  He is not a good guy.

L6PPMELS

1     What he did to my family was like that of Bernie Madoff.

2              It's not clear to me if this victim was a victim of

3     this particular fraud or of the prior fraud for which he was

4     sentenced before Judge Wood, but again, I'm going to ask the

5     government to see if any victims would like to be heard today.

6              All right.  So are there any other submissions that I

7     am missing?

8              MR. MERINGOLO:  Nothing from the defense, Judge.

9              MR. FERGENSON:  Nothing from the government, your

10    Honor.

11             THE COURT:  Okay.  Thank you.  All right.  So let's

12    begin by discussing the presentence report prepared by the

13    probation department.  Mr. Meringolo, have you reviewed the

14    presentence report and discussed it with your client?

15             MR. MERINGOLO:  Yes, I have, Judge.

16             THE COURT:  Do you have any objections?

17             MR. MERINGOLO:  We do not have any objections.

18             THE COURT:  All right.  Mr. Meli, have you reviewed

19    the presentence report and discussed it with your attorney?

20             THE DEFENDANT:  I have discussed it with my attorney,

21    your Honor.

22             THE COURT:  Okay.  And did you have enough time and

23    opportunity to review the entire presentence report with your

24    attorney?

25             THE DEFENDANT:  We did it over the phone.  It was --

L6PPMELS

1    but I have not physically held the presentence report, your

2    Honor.

3              THE COURT:  But he read the whole thing to you and --

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  -- and you feel like you have had a full

6    opportunity to review it and raise any objections; is that fair

7    to say?

8              THE DEFENDANT:  Yes, that's fair to say.

9              THE COURT:  Okay.

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Thank you.  Does the government have any

12   objections to the presentence report?

13             MR. FERGENSON:  No, your Honor.

14             THE COURT:  Okay.  All right.  The presentence report

15   will be made a part of the record in this matter and placed

16   under seal.  I am adopting the factual findings in that report.

17   If an appeal is taken, counsel on appeal may have access to the

18   sealed report without further application to the Court.

19             Now, Mr. Meli, when you pled guilty back in April, we

20   discussed the federal sentencing guidelines.  Do you remember

21   that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Okay.  So the guidelines are a set of

24   rules published by the Sentencing Commission in order to guide

25   judges when they impose sentence.  Although at one time they

L6PPMELS

```
1   were mandatory, meaning judges were required to follow the
2   guidelines, they are no longer mandatory, meaning they're not
3   binding.  Nonetheless, judges must consider the guidelines in
4   determining an appropriate sentence, and then must ensure that
5   they've been properly calculated.
6           Do the parties agree with the guidelines calculation
7   in the presentence report pursuant to which Mr. Meli is facing
8   a guidelines range of 37 to 46 months in prison?
9           MR. MERINGOLO:  From the defense, yes, Judge.
10          MR. FERGENSON:  Your Honor, the government has no
11  objection to the guidelines range in the PSR.  It stands by the
12  stipulated guidelines range in the plea of, I believe, 30 to 37
13  months' imprisonment.
14          THE COURT:  Oh, all right.  So let's just get out the
15  PSR.  So the PSR calculated the guidelines at 37 to 46 months.
16  The plea agreement was 30 to 37 months?  Let's just get that
17  out again.
18          MR. MERINGOLO:  No, Judge.  The plea agreement was for
19  37 to 46 months.
20          THE COURT:  Oh, it was.  Okay.  Mr. Fergenson?
21          MR. FERGENSON:  I apologize, your Honor.  There must
22  be a typo in my notes here.  My apologies.
23          THE COURT:  All right.  So we are all on the same
24  page.  I just want to confirm with everyone that we're on the
25  same page that Mr. Meli's offense level is 19, his criminal
```

L6PPMELS

1   history category is III, and his recommended guidelines

2   sentence is 36 to 47 months in prison; is that right?

3            MR. FERGENSON:  Yes, your Honor.

4            MR. MERINGOLO:  That is correct, Judge.

5            THE COURT:  Okay.  I am just going to go back to the

6   presentence report just to confirm that there might be a

7   discrepancy.  I will note that the presentence report notes

8   that the plea agreement did, indeed, calculate the guidelines

9   range at 30 to 37 months.  So let's just look at the

10  calculation and make sure that we all agree.

11           (Pause)

12           Right.  So the presentence report, again, calculates

13  his guidelines range at 19.  I think we all agree on that.

14  He's in criminal history category III, which is 37 to 46

15  months.  And the reason he's in criminal history category III

16  is because he got three points for the 2017 conviction, 2018

17  sentence, before Judge Wood, and then there were two points

18  added because the instant offense was committed while Mr. Meli

19  was under a criminal justice sentence for the October 31st,

20  2017, conviction.

21           Okay.  All right.  I just wanted to confirm that.

22  With no objection, that is the guidelines calculation that I'm

23  adopting.  As I said a moment ago, that range is only advisory.

24  I may impose a sentence outside of that range based on one of

25  two concepts, a departure or a variance.

L6PPMELS

```
 1            A departure allows for a sentence outside of the
 2    advisory range based on some provision of the guidelines.  In
 3    the plea agreement -- and the plea agreement did indeed -- I
 4    think it seems like the PSR maybe made a mistake.  So I'm
 5    looking at the plea agreement now, and the plea agreement does
 6    indeed calculate the stipulated guidelines range as 37 to 46
 7    months.  So in any event, we're all in agreement that that's
 8    what it is.
 9            So in the plea agreement, both parties agree that no
10    departure from the guidelines range is warranted.
11    Nevertheless, I've considered whether there's an appropriate
12    basis for a departure from the advisory range within the
13    guidelines system.  And while recognizing that I have the
14    authority to depart, I don't find any grounds warranting
15    departure under the guidelines.
16            I do, though, also have the power to impose a
17    non-guidelines sentence based on what we call a variance, which
18    is what I understand the defendant is seeking.
19            So with that, why don't we hear from the parties.
20    Would the government like to be heard?
21            MR. FERGENSON:  Yes, your Honor.  I think there are a
22    few points that the government would like to make, in addition
23    to its written submission, as to why a guidelines sentence is
24    appropriate in this case.
25            The first is that the context in which Mr. Meli
```

L6PPMELS

committed this fraud is truly egregious.  This scheme was

concocted not only to commit a fraud on investors, but on

another level to commit a fraud on the Court and the justice

system.  It was initiated shortly after the defendant's arrest

and was, in many respects, similar to the scheme for which --

and when I say "the defendant's arrest," his arrest of his

original case before Judge Wood.

         The scheme that he is being sentenced on today was

similar to the scheme he had been running before, but he had

also -- after being arrested, he needed to hide his

involvement; so he made -- he used a new front company, and he

used new front employees, investor-facing individuals,

including a family member of his, his co-defendant, James

Siniscalchi.  Also deceived investors and continued stealing

money while his criminal case was proceeding before Judge Wood.

         Much of the money stolen, about $2 million in total,

went to his family members.  It also went to his apartment

complex to continue funding his -- what was an extravagant and

lavish lifestyle, and I think importantly, some of that money

even went to fund his criminal defense in the original case,

your Honor.  He continued to steal investor money to pay for

expensive lawyers that were representing him in that original

case.

         He continued this fraud while his case moved forward.

He maintained this fiction that he had tickets; that his prior

L6PPMELS

1     crime was due to accounting errors or mistakes.  That was

2     simply not the case.  There were no tickets, and Mr. Meli never

3     came clean.

4           In court, in that original case, your Honor, he

5     consistently minimized.  He would describe his conduct as

6     mistakes at his original sentencing.  He even had, what I think

7     can be fairly termed, the Chutzpah to say to Judge Wood at his

8     sentencing -- which took place in April 2018, right while this

9     fraud is continuing going on, the one that we're here for

10    today -- to tell her that:  "My major weakness is transparency.

11    I should have listened to people who told me I needed to focus

12    more on that.  I could have avoided a lot of the mistakes that

13    have brought me here today."

14          He said that while he was actually defrauding new

15    investors in a substantially similar scheme, your Honor.  And

16    again, I think it's noteworthy to say that not only was he

17    misleading pretrial services and misleading the Court and the

18    government about what he was doing, but he was even using, at

19    that time, investor money to fund his criminal defense.

20          Worse still, your Honor, even after being sentenced,

21    the defendant, through intermediaries who were ostensibly

22    running this new front company, Indio, he lulled investors into

23    thinking they would receive a return on their investment up

24    until the time he surrendered to serve his sentence.

25          The notion that a defendant somehow voluntarily

L6PPMELS

withdrew or ceased this criminal activity is just dead wrong,

your Honor.  The only time he stopped was when he was actually

imprisoned.  At that time, the defendant knew his calls were

recorded, his e-mails could be monitored, and that's the only

time that the music finally stopped on this new fraud.

I think it's important to note that in addition to the

context of the fraud that is just so egregious, your Honor,

that this was a substantial fraud in its own right.  It was a

fraud that Mr. Meli had never been punished for.  It's a fraud

that his victims have never, for this fraud, have never gotten

some sense of justice on, and it was significant in that it was

millions of dollars.  It was approximately two million more

dollars, your Honor.  It's not an insignificant sum of money.

And just to be clear, your Honor, this fraud was

unknown to Judge Wood at the original sentencing, and Meli's

involvement in the fraud was unknown to the government.  None

of that is accounted for in the sentence that Mr. Meli is

currently serving.

Based on all of that, your Honor, the government would

respectfully submit that a guidelines sentence is necessary,

first, to provide just punishment on behalf of this crime's

victims.  It's necessary to provide deterrence, both specific

and general, your Honor.  And I think, perhaps most importantly

in some respects, your Honor, to promote respect for the law.

If Meli gets a concurrent sentence or a slap on the

L6PPMELS

wrist for this crime, it would suggest that he could get a pass

on new crimes.  Because of the severity of his prior crimes,

the government would respectfully submit that that is the wrong

message to send both to him and to the public.  No one should

get a pass on the conduct that Mr. Meli engaged in here.  To

the contrary.

        The fact that he did it while being prosecuted,

admitting his guilt and after being sentenced in a

substantially similar fraud, actually indicates that a

significant sentence is appropriate here because that will show

Mr. Meli and others that he was not, is not and never will be

above the law, your Honor.

        THE COURT:  What's your view on consecutive versus

concurrent time?  Is your view, like that of the probation

department, that the entirety of the sentence be consecutive?

        MR. FERGENSON:  Yes, your Honor.

        THE COURT:  Or are you not taking a position on that?

        MR. FERGENSON:  No, your Honor.  I believe that your

Honor has discretion in that matter, but I think that it would

be appropriate, given that this is a separate crime that

Mr. Meli committed that he has not been previously punished

for, I believe that a consecutive sentence would be

appropriate.

        THE COURT:  Are there any victims who would like to

speak today?

L6PPMELS

1          (Pause)

2          MR. FERGENSON:  The government is not aware of any,

3     but I will wait a moment in case.

4          THE COURT:  I assume you've notified the victims of

5     this proceeding, correct?

6          MR. FERGENSON:  We did, your Honor.

7          THE COURT:  So I'm just going to ask more generally if

8     there are any victims on the line who would like to be heard

9     today.  I did read the statement of a Robert Calsberg, who

10    called this morning, but as I noted, it's not clear to me, and

11    maybe Mr. Ferguson you know, if he was one of the victims from

12    this fraud or the prior fraud?

13         MR. FERGENSON:  Your Honor, unfortunately, I do not

14    know, and I don't want to take a guess.

15         THE COURT:  So, again, are there any victims on the

16    line who would like to be heard today?

17         (Pause)

18         Okay.  Mr. Meringolo, would you like to be heard?

19         MR. MERINGOLO:  Yes, Judge.  Judge, I don't want to

20    undermine the crime whatsoever and the previous crime.  I do

21    want to just identify a few things that the government has

22    said.  And the government is correct, basically, in everything

23    they said about the Wood's case, but what was really more

24    compelling, Judge, is that during that case and the sentencing,

25    the quote that the government made, that maybe Mr. Meli didn't

L6PPMELS

1    accept full responsibility for his crimes, was an indication of

2    him not really being explained and aware of what the crimes

3    were.

4           That's when -- I'm not -- just so you know, Judge, I'm

5    not the lawyer that took any money from the victims.  I'm not

6    that high-priced lawyer.  I'm just John Meringolo.

7           But when I got into the case, I explained to Mr. Meli

8    basically the other case and this case, and we and the

9    government and I, who he's a gentleman, we negotiated this

10   particular deal for this particular case.  And that's what I'm

11   here for to argue to the Court.  We would like a under, you

12   know, a guidelines sentence for a concurrent sentence for

13   multiple factors, and I will list the three or four factors

14   right now.

15          First and foremost, I don't believe the probation

16   office or the government addressed the Covid issue, and the

17   Covid issue for Mr. Meli is a very, very significant issue that

18   we would respectfully ask the Court to take into consideration

19   when giving this sentence.  And the reason why, is that

20   Mr. Meli spent 22 months, 14 of which was during Covid, at the

21   MDC.

22          And I'm not going to belabor, you know, what the Court

23   has done or what judges in the Southern District and around the

24   country have decided, you know, what to do with respect to an

25   individuals in a lockup like Mr. Meli.  But Mr. Meli, you know,

L6PPMELS

he's in his forties.  He's a cancer survivor.  At that time, he

could not see his family, you know, just the mental anguish of

when Covid happened.

        I think now, with the vaccine, we all have a grip on

it, but just putting not only Mr. Meli, all defendants, in that

situation of being, in this case, in MCC and MDC, you know, we

believe that your Honor can use that in order to grant a

downward variance because it was a substantial issue.

        In addition to that, he could not see his family.  He

could not see his lawyer.  It was very hard for him, and all

the defendants at that particular time, and we respectfully ask

your Honor to take that into consideration.

        In addition to that, Judge, we would like, under

3553(a), to take his family circumstances into consideration.

And, you know, he has his wife and his four children, his mom

and his dad.  His wife moved out to Minnesota with his four

children.  We submitted the letter from his son, which was very

eloquently put, you know, to show you that Mr. Meli and his

wife are good parents.  Despite these crimes, you know, he is a

very, very good father, and I would like you to know that.

        His wife is doing a tremendous job, but it's very

difficult for her and the four kids and that -- to digress to

specific deterrence, you know, your Honor, I think he's going

to move to Minnesota.  There are conditions that you could set

forth, which would preclude him or be monitored, whether it be

L6PPMELS

1  the internet or the cell phone, and he's going to get out of

2  the New York area.

3          And I think that's where basically all these crimes

4  happened, you know, with whatever he was doing.  And usually,

5  you know, when you decide to move -- you know, most defendants

6  don't move, but when you decide to move and you take yourself

7  out and you realize what is important -- and I think since

8  Mr. Meli's been incarcerated, not being able to see his family,

9  going through the Covid, I believe -- I mean, it's really

10  Mr. Meli and I'm just his advocate, Judge, but I think that

11  today he knows what's more important in life, and it's your

12  family.

13          I mean, at the end of the day, we all know on this

14  call, whoever is on this call, that really that's the most

15  important thing, you know.  And we would like you to take that

16  into consideration.

17          Lastly, Judge, you know, Mr. Meli -- the warden was

18  going to let Mr. Meli out about a month-and-a-half ago, I

19  believe.  He had documentation, papers, and he was going to be

20  put on home confinement for the rest of the previous sentence

21  that Judge Wood gave him.  And Mr. Meli, at first, you know, we

22  discussed this and, you know, and I just said, you know, don't

23  tell your wife and kids until it gets close, Mr. Meli, because,

24  you know, you just never know.

25          So he spent his time in quarantine.  He was two or

L6PPMELS

| 1 | three days or a week, I don't recall the time period, Judge,
| 2 | when he was going to be released, and he got the letter to be
| 3 | released; so he did let his wife and his children know.  And
| 4 | although this isn't part of any legal argument, so to speak,
| 5 | it's just it's not nice what happened to him.  I mean, I don't
| 6 | know how else to describe it, but it not being nice that they
| 7 | said he was going to be released, and then the day he was going
| 8 | to be released, his family was coming home.  Yes, we had this
| 9 | case, Judge; yes, you're going to sentence on this case, but he
| 10 | was going to be permitted to do the rest of the time at home
| 11 | with his family, which is --
| 12 |         THE COURT:  Look, I read this argument in your papers
| 13 | and in the letters.  I fully understand why that would be
| 14 | emotionally trying --
| 15 |         MR. MERINGOLO:  Yes.
| 16 |         THE COURT:  -- and upsetting for Mr. Meli and his
| 17 | family, but I'm not sure how that affects this sentence in this
| 18 | case.
| 19 |         MR. MERINGOLO:  I understand, Judge.
| 20 |         THE COURT:  I mean, I'm going to consider it, like
| 21 | I'll consider all of the other factors, as I do, under 3553(a).
| 22 |         MR. MERINGOLO:  Yes, Judge.
| 23 |         THE COURT:  But I understand why it would be
| 24 | disappointing, but it's not something he was entitled to in any
| 25 | way.  I mean, Judge Wood gave a very severe sentence --

L6PPMELS

1          MR. MERINGOLO:  She did.

2          THE COURT:  -- because she thought it was appropriate

3    in that particular case.  But in any event, I can understand

4    how that would be, you know, very traumatic for the family and

5    for Mr. Meli.

6          MR. MERINGOLO:  Yes.  And, Judge, I think the reason

7    why he got a substantial sentence from Judge Wood is during

8    that sentencing, you know, maybe she felt that he didn't accept

9    responsibility at that time, and that's why it was, you know, a

10   hundred-page sentencing and lawyers were going back and forth,

11   which I don't think, your Honor, we don't have that.

12         He accepts responsibility before this Court.  If you

13   read the PSR, he accepts responsibility.  He would like to make

14   a statement to your Honor.  He's told me that he accepts

15   responsibility, and I think that is a tremendous difference and

16   that's why we would like you to take all of these things into

17   consideration in addition to his statement, Judge, and do the

18   lowest sentence possible.  Thank you very much.

19         THE COURT:  Thank you.

20         So, Mr. Meli, would you like to be heard??

21         THE DEFENDANT:  Yes, your Honor.  Excuse me for being

22   nervous when I speak.

23         THE COURT:  That's all right.  Take your time.

24         THE DEFENDANT:  I would like to say I'm -- I'd like to

25   take a moment to apologize to everyone and anyone who has been

L6PPMELS

1   hurt by my actions.  I acknowledge what I did was absolutely

2   wrong.  I have spent the last three years, your Honor, every

3   day I wake up, I try to do my very best to think about what I

4   could do to make amends, how I got here, re-prioritizing what

5   my thinking is going to be, creating an action plan to try and

6   come out and prove.  And given the opportunity, I'm going to

7   prove, and when given the opportunity, I will prove that I will

8   be a model for rehabilitation and a model for redemption.

9        I will work exclusively within the confines of the law

10  to show all of my victims that I'm very serious, very, very

11  serious about honoring all of the laws and doing everything I

12  can to make amends.  Everything.  And it's going to be very

13  difficult because there's a lot of trust that's been broken, a

14  lot of people that feel betrayed, and I live with that every

15  day.

16       I try to remain grateful for the health of my family,

17  but I am -- you know, I had real moments, particularly while I

18  had Covid.  While I was sitting there, I've had real moments of

19  mortality.  I've had real moments of worrying about ever being

20  able to show my sons the man that I really want to be, the man

21  that I am for them, to be a husband for my wife that I can, and

22  to be a member back in society that they can be proud of.

23       I'm sorry, Judge Abrams, and I'm sorry to the Court.

24  I'm sorry to my family, extremely sorry to my family, and to

25  anybody who was hurt.  I beg for the opportunity to help me get

L6PPMELS

1   that second chance as soon as possible.  I accept what I have

2   done, and that's really all I have to say, your Honor.

3          THE COURT:  All right.  Thank you.

4          So I'm required to consider the advisory guidelines

5   range of 37 to 46 months, as well as various other factors that

6   are outlined in a provision of the law that a number of us

7   referenced already today, it's 18, United States Code, section

8   3553(a), and I have done so.

9          Those factors include, but are not limited to, the

10  nature and circumstances of the offense, and the personal

11  history and characteristics of the defendant, because every

12  defendant must be considered individually as a person.

13         Judges are also required to consider the need for the

14  sentence imposed to reflect the seriousness of the offense,

15  promote respect for the law, provide just punishment for the

16  offense, afford adequate deterrence to criminal conduct,

17  protect the public from future crimes of the defendant, and

18  avoid unwarranted sentencing disparities, among other things.

19         So as we've discussed, you know, Judge Wood sentenced

20  Mr. Meli to 78 months in prison for his involvement in an

21  investment scheme that defrauded over a hundred investors,

22  totaling approximately $100 million.  It involved purchasing

23  tickets to various live events for resale and profit on the

24  secondary market, and distributing the profit among the

25  investors, but there really were no tickets.  And he used the

L6PPMELS

investor funds for himself, purchasing a multi-million dollar
home, watches, jewelry, a Porsche.  It didn't stop there, and
that was the old case.

        And I fully recognize what I'm sentencing Mr. Meli for
is this new case, but it is important to put it in context.
And I do think the government made some very legitimate
arguments in that respect.  It didn't stop there.

        I mean, it was after his arrest for this fraud, but
before he pled guilty, but while he was on pretrial supervision
and up to and including when he literally surrendered to begin
serving his sentence, that he was orchestrating and devising
another fraudulent scheme, which is the one that we're here
about today, acting as a silent partner in a new company
called, Indio Entertainment.

        He recruited his cousin, and co-defendant in this
case, to serve as chief compliance officer of Indio.  He used
the same contacts and templates and other documents used in the
first fraudulent scheme to lull investors, executing false
contracts with Indio, pledging to provide certain bulk tickets
for a certain price, and then Indio executed contracts with
investors again, but there were no tickets.

        The investment funds were transferred into bank
accounts controlled by Mr. Meli and his cousin, or at least
controlled by his cousin, and the money was used for Mr. Meli's
personal expenses.  And this scheme caused a loss to the

L6PPMELS

victims of over $2 million, and he's personally accountable for losses of approximately $1.9 million.

So not only did this scheme harm real people, but I do have to consider the factors I mentioned.  I have to consider just punishment.  I have to ensure that a sentence promotes respect for the law, and I have to consider the need to deter Mr. Meli from doing this again, as well as to provide general deterrence.

When we talk about general deterrence, the goal is to deter others from engaging in similar schemes.  And when we talk about specific deterrence, it's about deterring Mr. Meli from doing the same thing again.

You know, when I was preparing for this sentencing, the same word came to me that the AUSA mentioned, which was Chutzpah.  It really took not only criminal intent, but given the timing of when Mr. Meli engaged in this fraud, it took real Chutzpah as well and a total lack of concern for the victims.

So I've considered all of that, but there are mitigating circumstances here.  I've considered Mr. Meli's health issues.  You know, I fully acknowledge, I don't doubt for a minute, the unimaginably harsh conditions that he was incarcerated under and was suffering from Covid under. Particularly in light of his health conditions and being a cancer survivor, how traumatizing that might have been.

I think time during the pandemic it must be much

L6PPMELS

1    harder than it is normally and it never is easy.  So I think

2    that is a very legitimate factor to consider, as well.  And I

3    will note that I read all of the letters from Mr. Meli's family

4    and fully realize how hard his absence has been on them, but,

5    you know, sadly, it usually is the family members of the

6    defendant who are hurt the most, or it can be.

7             Obviously, the victims were hurt as well.  So I've

8    considered all of that --

9             THE DEPUTY CLERK:  Judge.  It's Alison.  I just want

10   to ensure that Mr. Meringolo is still present.  His video lost

11   but --

12            MR. MERINGOLO:  I am.  I am.

13            THE DEPUTY CLERK:  Okay.  Great.  Thank you.

14            THE COURT:  So I balance all of that.  I've considered

15   whether a downward variance is appropriate.  In light of the

16   crime and all of the factors I just mentioned, I don't think a

17   downward variance is appropriate here.

18            I'm going to sentence Mr. Meli to be committed to the

19   custody of the Bureau of Prisons for a term of 37 months, but

20   for the reasons that I mentioned, the mitigating factors, I'm

21   going to make that sentence partially concurrent to the

22   existing sentence.

23            But in light of the fact that this was a separate

24   fraud and the circumstances of Mr. Meli engaging in this new

25   fraud, I'm going to make 12 months, or a year, of that sentence

L6PPMELS

consecutive to the sentence imposed by Judge Wood.  So it's a

37-month sentence, with 27 months to be served concurrently,

and 12 months -- excuse me, 25 months to be served concurrently

and 12 months to be served consecutively.

That term of imprisonment is to be followed by a term

of supervised release of three years, and I just want to think

out if that term of supervised release -- I'm going to make

that term partially consecutive and partially concurrent to the

one imposed by Judge Wood as well.  I'm going to make a year of

that to be consecutive, and two years to run concurrently to

the term of supervised release previously imposed.

I believe that this sentence is sufficient but not

greater than necessary to comply with the purposes of

sentencing set forth in the law.

What I'm going to do now is address the terms of

supervised release.  With respect to the term that is

concurrent, the terms imposed by Judge Wood will apply.  To the

additional one-year term, I'm going to impose the following

terms.

So, Mr. Meringolo, do you want me to read the standard

conditions out loud, or do you waive their public reading?

MR. MERINGOLO:  Judge, we waive the public reading,

and I will go over them with the client.

THE COURT:  Okay.  So the standard conditions of

supervised release are imposed.  The mandatory conditions are

L6PPMELS

imposed.  You must not unlawfully possess a controlled

substance.  You must not commit another federal, state or local

crime.  You must refrain from any unlawful use of a controlled

substance.  You must submit to one drug test within 15 days of

release from imprisonment and at least two periodic drug tests

thereafter, as determined by the Court.

In addition, I'm going to impose the special

conditions recommended by the probation department, in light of

the nature of this crime.  You shall submit your person and any

property, residence, vehicle, papers, computer, other

electronic communication, data storage devices, cloud storage,

or media, and effects to a search by any United States

probation officer and, if needed, with the assistance of any

law enforcement.

The search is to be conducted when there's reasonable

suspicion concerning violation of a condition of supervision or

unlawful conduct by the person being supervised.  Failure to

submit to such a search may be grounds for revocation of

release.  You shall warn any other occupants that the premises

may be subject to search pursuant to this condition.  Any

search shall be conducted at a reasonable time and in a

reasonable manner.

You will participate in an outpatient treatment

approved by the probation office, which program may include

testing to determine whether you've reverted to using drugs or

L6PPMELS

alcohol.  You must contribute to the cost of services rendered

based on your ability to pay and the availability of

third-party payments.  The Court authorizes the release of

available drug treatment evaluations and reports, including the

presentence investigation report, to the substance use disorder

treatment provider.

You must participate in an outpatient mental health

treatment program approved by the probation office.  You must

continue to take any prescribed medications, unless otherwise

instructed by the healthcare provider.

You must contribute to the cost of services rendered

based on your ability to pay and the availability of

third-party payments.  The Court authorizes the release of

available psychological and psychiatric evaluations and

reports, including the presentence investigation report, to the

healthcare provider.

Again, in light of the nature of the crime, you must

not incur new credit card charges and open additional lines of

credit without the approval of the probation officer, unless

you're in compliance with the installment payment schedule.

I'm also imposing that requirement in light of the

restitution and forfeiture orders that will follow.  And for

the same reasons, I'm going to require that Mr. Meli provide

the probation officer with access to any requested financial

information.

L6PPMELS

1          All right.  So that's supervised release.

2          I'm not going to impose a fine because the probation

3   office has reported that Mr. Meli will be unable to pay one,

4   and in light of the very serious restitution and forfeiture

5   orders, but I am imposing a mandatory special assessment or fee

6   of $100, which shall be paid immediately.

7          So at the time of Mr. Meli's plea, I issued a consent

8   preliminary order of forfeiture money judgment in the amount of

9   $2,082,425.  I just want to confirm with Mr. Meringolo that

10  there's no objection to a forfeiture order in that amount?

11         MR. MERINGOLO:  No objection, Judge.

12         THE COURT:  And I also want to confirm that there's no

13  objection to a restitution order in the amount of $1,909,146;

14  is that correct?

15         MR. MERINGOLO:  That is correct.  No objection, Judge.

16         THE COURT:  All right.  That restitution order will be

17  imposed as well.

18         So that's my sentence.  Does either counsel know of

19  any legal reason why this sentence cannot be imposed?

20         MR. FERGENSON:  No, your Honor.

21         MR. MERINGOLO:  Not from the defense, your Honor.

22         THE COURT:  All right.  So that is the sentence that

23  is imposed.

24         You, Mr. Meli, have the right to appeal your

25  conviction and sentence, except to whatever extent you may have

L6PPMELS

1   validly waived that right as part of your plea agreement.  If

2   you do choose to appeal, the notice of appeal must be filed

3   within 14 days of the judgment of conviction.  If you're not

4   able to pay for the cost of an appeal, you may apply for leave

5   to apply in forma pauperis, which simply means that court

6   costs, such as filing fees, will be waived.  If you request,

7   the clerk of court will prepare and file a notice of appeal on

8   your behalf.

9            Is the government moving to dismiss the open counts

10  against Mr. Meli?

11           MR. FERGENSON:  Yes, your Honor.

12           THE COURT:  All right.  They'll be dismissed.

13           Look, Mr. Meli, as I said, I read all the letters from

14  your family that were really heart wrenching.  They described

15  you as thoughtful and smart and empathetic and gentle and a

16  loving and caring father.  You know, your son's letter was, you

17  know, particularly heartfelt.  I mean, they all were, really,

18  and again, I am cognizant of how difficult the incarceration

19  has been on you and your family and your children.

20           And, you know, just, tragically, that's often what

21  happens, as I said earlier, to family members of a defendant in

22  a criminal case.  Now, I often say this at sentencing, but I

23  firmly belief this to be true.  I don't think you need to be

24  defined by the worst mistakes you've ever made, and you've made

25  some very serious mistakes that have been criminal in nature.

L6PPMELS

1   But I hope what you said is true.  I hope you are ready to move

2   forward, to live life in a way that you can be proud of and

3   your family can be proud of, and I wish you luck with that.

4              I do want to confirm that you've been able to hear and

5   see everything and understand everything that's happened in

6   this proceeding?

7              THE DEFENDANT:  I have.  Thank you, your Honor.

8              THE COURT:  Okay.  Are there any other applications at

9   this time?

10             MR. FERGENSON:  Not from the government.

11             MR. MERINGOLO:  No, your Honor.

12             THE DEPUTY CLERK:  It's Alison.  I just wanted to make

13   sure that the government is going to file or submit an order of

14   restitution for your review.

15             MR. FERGENSON:  Yes, the government will.

16             THE DEPUTY CLERK:  Okay.

17             THE COURT:  All right.  Hearing no more applications,

18   we are adjourned.  Thank you.

19             (Adjourned)

20

21

22

23

24

25